# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3016 | **DATE** | 9/28/2001 |
| **CASE TITLE** | GONZALO MURILLO vs. BRIAN PERRYMAN | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order: The INS's motion to dismiss [17-1] is granted and Murillo's petition for habeas relief is denied. The stay of deportation is lifted. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 2 8 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | DOCKETING SEP 28 PM 2: 21 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| GONZALO MURILLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 01 C 3016 |
| BRIAN PERRYMAN, District Director, | ) | |
| U.S. IMMIGRATION & NATURALIZATION | ) | Judge Guzman |
| SERVICE, and the United States of America | ) | |
| | ) | |
| Respondents. | ) | |

DOCKETED
SEP 2 8 2001

## MEMORANDUM OPINION AND ORDER

Gonzalo Murillo petitions for a writ of habeas corpus, contending that it is unlawful for the Immigration and Naturalization Service ("INS") to reinstate his 1993 order of deportation without a hearing and without first acting on his application for adjustment of status. Respondents move to dismiss Murillo's petition arguing that this court lacks jurisdiction and that the INS may lawfully deport Murillo without considering his application for adjustment of status. For the reasons set forth below the INS' motion to dismiss is granted. Murillo's petition for a writ of habeas corpus is denied.

## FACTUAL BACKGROUND

Petitioner is a native and Citizen of Colombia who was ordered deported by an immigration judge on April 30, 1993. Before Petitioner was deported, he was served with a "Notice of Country to Which Deportation has been directed and Penalty for Reentry without Permission," INS Form I-294, which is a warning letter from the District Director of the INS. The letter was provided in the Spanish Language, and as is evidenced by Petitioner's signature at the bottom left hand corner of the

1



document, the document was explained to him in the Spanish language and he acknowledged that he understood the contents of the letter. The pertinent information on this form reads follows:

> Should you wish to return to the United States you must write to this office or the United States Consular's office nearest your residence abroad as to how to obtain permission to return after deportation. Permission must be obtained from the Attorney General if you are seeking admission within (5) five years of deportation or removal, or within twenty (20) years if your deportation was subsequent to a conviction for an aggravated felony.

After Petitioner was advised of the legal consequences of his deportation and illegal reentry in Spanish, his native language, the Immigration Service executed a warrant of deportation, which Petitioner signed and marked with his thumb print. Murillo waived appeal of this decision. The date of that deportation was May 4, 1993.

On or about January 14, 1998, the Petitioner filed with the INS in Chicago, Illinois, a petition for alien relative, and adjustment of status to that of a lawfully admitted resident. The INS processed the application, and at the time of Petitioner's interview, discovered in his application that Petitioner had been previously deported in May of 1993. According to his application for adjustment of status, Petitioner returned without permission from the Attorney General sometime in May of 1996. He then met and married his United States' citizen's wife prior to the passage of IIRIRA. Therefore, on December 15, 2000, the INS issued a denial of his application for adjustment of status, setting forth the reasons for the denial. On December 19, 2000, the INS issued a Warrant for Arrest of Alien, Form I-2000, which states that the Petitioner is an alien who entered the United States at or near an unknown location in 1996 and is within the country in violation of the immigration laws, and is, therefore, subject to being taken into custody as authorized by Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.

On April 25, 2001, the Petitioner was taken into custody by the INS based upon his reentry after deportation, and warrant for arrest of an alien was served upon him in person. He was then served with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, which he signed, and requested an opportunity to make a statement.

On April 27, 2001, Petitioner filed the petition for writ of habeas corpus and motion for stay of deportation with the District Court in the Northern District of Illinois challenging his reinstated removal order, and asking that the district court stay his deportation. The Petitioner raises statutory and constitutional challenges to the reinstatement of his prior deportation order. Petitioner does not attack the merits of his original deportation order, claim that he was not previously deported, or deny that he illegally reentered the country after execution of the deportation order. Originally U.S. District Court Judge Lienenweber transferred the petition pursuant to 28 U.S.C. § 1631 to the Seventh Circuit of Appeals for want of jurisdiction. *See Castro-Cortez v. Reno*, 239 F.3d 1037 (9th Cir. 2000)(requiring aliens to seek judicial review of reinstatement orders directly with the Court of Appeals). Circuit Judge Diane P. Wood of the Seventh Circuit of Appeals, transferred the case back to the U.S. District Court on May 16, 2001, stating as follows:

> Gonzalo Murillo claims that he is being unjustly detained by the INS. He does not claim that he has received a final order of deportation or even that deportation proceedings have been initiated against him. Thus, the proper vehicle for challenging his custody is a habeas corpus petition pursuant to 28 U.S.C. § 2241.

Petitioner did not file a petition to review the reinstatement order in the court of appeals and Respondents did not ask the Court of Appeals to reconsider its decision despite the fact that the

3

reinstatement order is final.[1]  Petitioner is still in custody of the Respondents and this Court entered

a Stay of Deportation on June 15, 2001 until the merits of Petitioner's habeas petition could be

addressed.  The case is now pending before this court for determination of Petitioner's request for

habeas corpus relief.

## DISCUSSION

### I. Respondents' Motion to Dismiss

In support of its motion to dismiss the INS argues this Court lacks jurisdiction over Murillo's

petition for habeas relief under 8 U.S.C. § 1252(b)(9) as amended by § 306(a) of the Illegal

Immigration Reform and Immigrant Responsibility Act, (IIRIRA) 110 Stat. 3009-607, 612, because

the cause or claim has arisen from "an action taken or proceeding brought to remove an alien from

the United States."  *See* 8 U.S.C. § 1252(b)(9) (Supp. II 2000), *Reno v. American-Arab Anti-*

*Discrimination Committee,* 525U.S. 471, 483 (1999).  The INS points out that the reinstatement

decision is a final removal order, and the Court of Appeals has exclusive jurisdiction to review final

removal orders.  *See* 8 U.S.C. §1252(a)(b)(Supp V 1999), as amended, and *Castro-Cortez v. INS,*

239 F.3d 1037, 1044-45 (9th Cir. 2001).  We agree with Respondents that direct review by the Court

of Appeals certainly appears to be the appropriate procedure to follow in light of the fact that

Murillo's reinstated deportation order is final and Murillo's habeas petition challenges the

---

[1]On September 30, 1996, Congress enacted IIRIRA into law.  In Section 304(a) of IIRIRA, Congress abolished the old distinction between "deportation" and "exclusion" orders, and instituted a new form or proceeding, known as "Removal."  *See* 8 U.S.C. § 1229, 1229a(Supp. V 1999); 110 Stat. 3009-587 to 3009-593.  IIRIRA also expressly repealed the old INA provision setting forth separate procedures for exclusion and deportation of aliens.  *See* IIRIRA § 303(a), 110 Stat. 3009-585 (amending old 8 U.S.C. § 12267, and § 308(b)(6), 110 Stat. 3009-615 (striking old 8 U.S.C. § 1252b).  Congress also enacted special forms or removal proceedings for aliens arriving in the United States without valid documentation, see 8 U.S.C. 1225(b)(1) (Supp. V 1999).

constitutionality of various sections of the INA Act. As discussed in *Castro-Cortez* "[o]rders denying motions to reopen, like reinstatement orders, give effect to previously issued deportation orders. We conclude that § 242, like former § 106, authorizes review of 242(a)(1) reinstatement orders." *Castro-Cortez* at 1043. *See also INS v. St. Cyr,* 533 U.S. —, 121 S. Ct. 2271 (June 25, 2001). In *INS v. St. Cyr,* 533 U.S. —, 121 S. Ct. 2271 (June 25, 2001), the Supreme Court ruled that, while both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and IIRIRA took away the federal courts' jurisdiction under the INA to review criminal aliens' pure statutory challenges to their removal orders; neither the AEDPA nor the IIRIRA took away district courts habeas corpus jurisdiction under 28 U.S.C. 2241 to review such challenges. *St. Cyr* at 2275-81. However, the Seventh Circuit has instructed Petitioner to file his habeas petition before this Court.[2] District Courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus. Accordingly, we review the principal arguments set forth in Murillo's petition.

## II. Due Process

Murillo contends that Congress did not intend INA § 241(a)(5) to apply retroactively to pre-IIRIRA deportation orders and to apply it to him would have an impermissible retroactive effect. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 307, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). This protection applies to both aliens that legally and illegally are in the United States. *See Plyer v. Doe,* 457 U.S. 202, 210, 102 S. Ct. 2383, 72 L. Ed. 2d 786 (1982). "[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residency, his constitutional status

---

[2]Congress expressly provided for limited habeas corpus review in the district courts of immigration officers' expedited-removal decisions under Section 1225(b)(1). *See* 8 U.S.C. § 1252(e)(2) (Supp. V 1999).

changes accordingly. *Landon v. Plansenc,* 459 U.S. 21, 32, 103 S. Ct. 321, 74 L. Ed. 2d 21 (1982).

The Fifth Amendment provides both a procedural and substantive due process requirement which

prohibits the government from depriving an individual of life, liberty, or property in an unfair

manner. *See Matthews v. Eldridge,* 424 U.S. 319, 355, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The

substantive due process component precludes the government from engaging in conduct that "shocks

the conscience" or interferes with rights implicit in the concept of ordered liberty. *United States v.*

*Salerno,* 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

In support of his request for habeas relief Petitioner argues the application of INA

Sec. 241(a)(5) as amended 8 U.S.C. § 1231(a)(5) violates his rights under the Due Process Clause

of the Fifth Amendment and violates the Congressional intent behind Section 309 of IIRIRA.

Petitioner argues that the actions of the Respondents ignore the fact that Murillo is now being

removed based upon a provision that does not apply to someone in his situation, i.e. an alien whose

deportation order and subsequent reentry occurred prior to the effective date of Title III-A's

provisions, April 1, 1997, as well as an alien who has applied for adjustment of status. Petitioner

relying on *Castro-Cortez v. INS,* 239 F.3d 1037, 1044-45 (9th Cir. 2001) claims that he is entitled to

a hearing before an Immigration Judge and that the retroactive effect of Sec. 241(a)(5) violates his

rights under the Due Process Clause. Murillo asserts that § 241(a)(5) has an impermissibly

retroactive effect on him because it impairs a right he possessed prior to its enactment, see *Landgraf*

*v. USI Film Products,* 511 U.S. 244, 280, 141 S. Ct. 1483, 128 L. Ed2d 229, 280 (1994), i.e., the

right to request adjustment of his immigration status based on his marriage to a United States citizen.

Petitioner points out that the United States Supreme Court recently held that certain criminal aliens

could still apply for a Section 212(c) waiver because the retroactive effect of certain provisions of

the INA violated their rights to due process. *INS v. St Cyr.* 533 U.S. —, 121 S. Ct. 2271, 2287-2293 (June 25, 2001). We hold that §241(a)(5) does not have an impermissibly retroactive effect on Murillo.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 141 S. Ct. 1483, 128 L. Ed. 2d 229 (1994), the Court reaffirmed the traditional presumption against retroactivity. The Court stated that the inquiry as to whether the application of a new statute would have impermissible retroactive effect requires a "common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *Id.* at 269. The determination is guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* In *Landgraf*, the Supreme Court set out the two-part retroactivity test. First, if Congress clearly prescribes the statute's proper reach, that is the end of the matter. *Id.* Second, in the absence of such a clear prescription, the Court must assess "whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

Applying the two-part test set forth in *Landgraf v. U.S.I. Film Products*, 511 U.S. 244, 270 (1994), the Supreme Court in *St. Cyr* concluded that IIRIRA's elimination of Section 212(c) relief for aliens who entered into plea agreements with the reasonable expectation that they would be eligible for such relief "attached a new disability" in respect to past transactions, as such aliens are now left without an immigration remedy and would face certain deportations as a result of their crimes. *Id.* at 2288. The Court reasoned that "[p]lea agreements involve a quid pro quo between a criminal defendant and the government," and alien defendants generally do consider the immigration consequences of their crimes in deciding whether to enter into a plea agreement. *Id.*

at 2290. The *St Cyr* Court concluded that despite these very features, § 304(b) of IIRIRA was ambiguous and "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien ... forecloses the conclusion that, in enacting § 304(b), Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the counteracting benefits." *Id.* Therefore, the Court held that Section 212(c) relief remains available to aliens, like *St. Cyr*, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for Section 212(c) relief at the time of their plea under the law then in effect. *Id.* at 2292. The *St Cyr* Court stated that the discretionary nature of the relief sought "d[id] not affect" its holding that the statute had an impermissibly retroactive effect, explaining that "[t]here is a clear difference, for purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *Id.* 2293.

We agree with Respondents, however, that the retroactivity analysis in *St. Cyr* applies to a limited number of criminal aliens only. As Justice Scalia noted in his dissent:

> [I]n contrast, noncriminal aliens seeking to challenge their removal orders – for example, those charged with having been inadmissible at the time of entry, with having failed to maintain their nonimmigrant status, with having procured a visa through a marriage that was not bona fide, or with having become within five years after the date of entry, a public charge, *see* 8 U.S.C. §§ 1227(a)(1)(A), (a)(1)(G), (a)(5) (1994 Ed. Supp. V) – will still presumably be required to proceed directly to the court of the court of appeals by way of petition for review, under the restrictive modified *Hobbs* test review provisions set forth in § 1252(a)(1), including the 30-day filing deadline, *see* § 1252(b)(1).

*St. Cyr* at 2297.

> The Court has therefore perverted a statutory scheme designed to expedite the removal of criminal aliens into one that now affords them more opportunities for (and layers of) judicial review (and hence more opportunities for delay) than are afforded non-criminal aliens . . ..

*Id.*

Murillo clearly falls within the inadmissable at time of entry category. Furthermore, *St. Cyr* does not alter the first step of the *Landgraf* retroactivity analysis in reinstatement cases. As the Court stated in *Landgraf*: [e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly:..For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* at 265. Thus, the essential question is not whether the person later expressly relied on a given understanding of the law, but whether applying the new law to the original past conduct changes the consequences of that conduct. *See id.* at 283-284.

In the reinstatement context, Congress made clear its intent to apply Section 1231(a)(5) to aliens who reentered the United States illegally prior to April 1, 1997. For example, Congress inserted language in Section 1231(a)(5) making it applicable to aliens who reentered before the statute took effect. *See* U.S.C. 1231(a)(5) (Section 1231(a)(5) shall apply to any alien "who has reentered" the United States after removal). Section 309(d)(2) of IIRIRA, in turn, defines an order of removal to "include a reference to an order of exclusion and deportation or an order of deportation." Accordingly, Congress expressed its intention to apply Section 241(a)(5) to aliens such as Petitioner, against whom deportation orders were entered prior to the IIRIRA's enactment. *See Mendez-Tapia v. Sonchik,* 998 F. Supp. 1105, 1108 (D. Ariz. 1998) (finding that "Congress has

9

prescribed section 241(a)(5)'s reach" and citing IIRIRA § 309 (d)(2); *see also* 8 C.F.R. § 241.8(a); *United States v. Pantin*, 155 F. 3d 91 (2d Cir. 1998), *cert. denied,* 525 U.S. 1086 (1999) (discussing IIRIRA § 309(d)(2) and finding that "removal" encompasses "deportation" for purposes of the criminal illegal reentry statute).

On the other hand it is clearly undisputed that Congress failed to insert any "express" statement as to whether § 241(a)(5) applies to those aliens that reentered the country prior to the statute's effective date. It is also undisputed that Subtitle A (revision of removal procedures) includes a general effective date that applies to almost all of its provisions. *See* IIRIRA § 309(a). Section 241(a)(5) does not contain an exception to this general date. Thus, it can be concluded that Congress indicated that this date should be applied.

For the sake of discussion even if the application date of section 241(a)(5) could be concluded to be ambiguous and Murillo were to move into the second step of *Landgraf* Murillo's petition fails at this step. Implied in Murillo's brief is that he relied on his pre-IIRIRA marriage to adjust his status to that of a citizen. This cannot be considered to constitute detrimental reliance for purposes of assessing the retroactive effect of § 241(a)(5) because it cannot be concluded that his marriage in "reliance" on preexisting law weakened his immigration status under the new IIRIRA. Again, *St. Cyr* is instructive. As previously discussed the *St. Cyr* court stated that the discretionary nature of the relief sought "d[id] not affect" its holding that the statute had an impermissibly retroactive effect, explaining that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." 121 S. Ct. At 2293. Aliens like St. Cyr had a significant likelihood of receiving the relief they sought under the old law whereas Murillo did not have such an expectation. Petitioner was placed in reinstatement

10

proceedings because he illegally reentered the United States after his deportation in December 1993. At the time of his deportation, there was no deportation agreement or quid pro quo that could have created a reasonable expectation of relief on the part of the Petitioner. In order to obtain an adjustment of status, an application must have been filed and an immigrant visa must be immediately available to the applicant, 8 U.S.C. § 1255(a)(3) (Supp. V 1999). Murillo did not attempt to meet either of these requirements until after the effective date of § 241(a)(5). Congress enacted IIRIRA on September 30, 1996 and section 241(a)(5) took effect six months after. *See* IIRIRA § 309(a). Thus, Murillo's failure to apply for his resident status before the new law took effect fatally undermines his contention that § 241(a)(5)'s application to him "attached new legal consequences to events completed before its enactment. *St. Cyr at* 121 S. Ct. 2290.

Similarly, we decline to follow *Castro-Cortez*. As Judge Fernandez's dissent points out, IIRIRA § 309(a) contains a specific date (April 1, 1997) that the provision became effective. The fact that Section 241(a)(5) does not specifically state that it applies to aliens who had reentered before its enactment does not mean it cannot be applied to all reentries, regardless of the date when Congress has provided sufficient guidance on the question of Section 241(a)(5)'s reach through its general effective date provision in IIRIRA § 309. Judge Fernandez further stated

> "[i]t is important to note that the situation here is quite unlike those where a person takes some legally proper action which can be said to confer a settled expectation upon him that he will at least garner consideration for some form of discretionary relief. *See, e.g. Bowen v. Hood,* 2020 F. 3d 1211, 1220-22 (9th Cir. 2000) (if a person has already obtained eligibility for consideration for early prison release through the legal act of becoming involved in drug rehabilitation, that cannot be taken from him); *id.* at 1223-25 (Fernandez, J., concurring and dissenting) (same, but disagreeing on whether the threshold condition had been met); *Magana-Pizano,* 200 F.3d at 613 (when a person performed the legal act of pleading nolo contendere or guilty,

11

he might have obtained a settled expectation to consideration for relief). Nothing of the sort exists here. To say that society must recognize some kind of reliance rights because a person might have committed the crime of reentry and ignored the order of deportation in the hope that he could get a later reprieve is as bizarre as saying that a person might have committed the crime of burglary with the hope of a reprieve in mind. The claim settled expectation here is bottomed on nothing more than an illegal act, which continued to be illegal throughout the alien's stay in this country. We might rightly ask how a person can demand a right (even one to consideration for discretionary relief) founded on nothing but his own wrongdoing. I would hold that he cannot.

*Castro-Cortez* at 18.

In addition, the law in effect at the time of the Petitioner's reentry did not entitle illegally reentering aliens to any immigration remedies or relief from removal. Unlike *St. Cyr*, he cannot demonstrate that he detrimentally relied on the law prior to IIRIRA. An alien like Petitioner, who was deported and is therefore subject to a statutory bar to reentry, obviously does not have any vested right to remain in the United States. It cannot be concluded that Petitioner reasonably relied on the availability of relief in deciding whether to reenter unlawfully. Petitioner was clearly put on notice that adverse consequences might result from his illegal reentry.

Petitioner's final argument, the possibility of discretionary relief, fails as a matter of law because 8 U.S.C § 1231(a)(5) precludes Petitioner from applying for adjustment status. The eligibility requirements for adjustment of status include that an immigrant visa is immediately available to the applicant at the time the adjustment application if filed. 8 U.S.C. § 1255(a)(3) (Supp. IV 1998). Petitioner's wife did not file an application for adjustment of status on his behalf until January 14, 1998, well after 241(a)(5)'s effective date. Thus, the deportation order was properly

reinstated because Murillo (1) had been previously deported, (2) admitted his identity, and (3) illegally reentered the United States in 1996.

## CONCLUSION

For the reasons set forth above the INS's motion to dismiss (17-1) is granted and Murillo's petition for habeas relief is denied. The stay of deportation is lifted. This case is hereby terminated.

**SO ORDERED**

**ENTERED:** 9/28/01

**HON. RONALD A. GUZMAN**

**United States Judge**